UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN JENKINS and MATTHEW BROOKSHIER<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant. | Case No. 23-cv-01075-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 37 |

Now before the Court is the motion to dismiss filed by FCA US LLC ("FCA"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and GRANTS, IN PART, AND DENIES, IN PART, FCA's motion.

**BACKGROUND**

**A.   Procedural History.**

Plaintiff Brian Jenkins ("Jenkins") filed the original complaint in this matter and filed a first amended complaint ("FAC") on May 5, 2023. Jenkins sought relief on behalf of himself and a putative class of individuals who purchased allegedly defective Dodge Durangos, which the Court will discuss in more detail below.

Jenkins brought claims against FCA for: (1) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. sections 2301, *et seq.* (the "MMWA Claim"); (2) breach of the implied warranty of merchantability; (3) breach of express warranty; (4) negligent misrepresentation; (5) fraudulent concealment; (6) unjust enrichment; (7) violations of California's Consumer Legal Remedies Act, Civil Code sections 1750, *et. seq.* (the "CLRA Claim"); (8) violations of California's Unfair

1  Competition Law, Business and Professions Code sections 17200, *et seq.* (the "UCL Claim"); (9)
2  violations of California's False Advertising Law, Business and Professions Code sections 17500,
3  *et. seq.* (the "FAL Claim"); (10) violations California's Song-Beverly Consumer Warranty Act
4  ("Song-Beverly Act"), Civil Code sections 1791.2, 1792, 1793.2.

5      The Court granted, in part, and denied, in part, FCA's motion to dismiss the FAC. *See*
6  *Jenkins v. FCA US LLC*, 2024 WL 1141002 (N.D. Mar. 15, 2024). The Court dismissed each of
7  Jenkins' warranty based claims, without leave to amend. *Id.* at *2-*4. The Court concluded that
8  Jenkins' claim for fraudulent concealment was not barred by the economic loss rule but found he
9  failed to plead sufficient facts to show he had a transactional relationship with FCA. *Id.* at *4-*5.
10 The Court also found his allegations failed to comply with Federal Rule of Civil Procedure Rule
11 9(b). *Id.* at *5-*6. Finally, the Court dismissed the claims seeking equitable relief because
12 Jenkins failed to show they were based on different factual predicates than his legal claims. *Id.* at
13 *6. The Court gave Jenkins leave to amend the fraud based claims and the CLRA, UCL, and FAL
14 claims.

15     On May 5, 2023, Jenkins and a new Plaintiff, Matthew Brookshier ("Brookshier"), filed a
16 second amended complaint ("SAC") and re-asserted each of the claims Jenkins brought in the
17 FAC. FCA moves to dismiss each of the claims, with prejudice.[1]

18 **B.     Factual Background.**

19     Plaintiffs allege that Dodge Durangos manufactured between 2014 and 2023 have a
20 defective rear taillight that "allows water to intrude into the taillight assembly by leaking through
21 the gaskets and seals on the vehicle tailgate (the "Defect")." (SAC ¶ 2.) According to Plaintiffs,
22 the Defect adversely affects the taillights, reverse lights, and reverse camera system and poses a
23 significant safety threat. (SAC ¶¶ 3-6.) Plaintiffs allege FCA has known about the Defect since at
24 least 2020. Although FCA has notified dealers about the Defect, it has not instructed dealers to

---

[1] Brookshier withdraws his MMWA and Song-Beverly Act Claims. (Dkt. No. 40, Plaintiff's Opposition ("Opp.") at 5, n. 1.) He and Jenkins also expressly note in the SAC that they included claims the Court dismissed to preserve them for purposes of appeal. (*See, e.g.,* SAC at 54 n.55.) Accordingly, the Court dismisses Brookshier's common law implied warranty claim for the same reasons it dismissed Jenkins' claim. *Jenkins*, 2024 WL 1141002, at *2.

1   notify owners. FCA also has not stated it would inform owners of the Defect and has not issued
2   recalls or offered to repair the Defect when it manifests outside the warranty period. (*See, e.g.,*
3   SAC ¶¶ 8-10, 71.)
4       In March 2020, Jenkins purchased a used 2019 Durango from Kia of Stockton. Before he
5   purchased the vehicle, Jenkins researched Durangos online, "viewed online advertisements and
6   marketing materials," and used the "build your own car" feature on Dodge's website. (SAC ¶ 23.)
7   Jenkins also visited the Putnam Chrysler Jeep Dodge dealership in Burlingame, California
8   ("Putnam"), where he test drove a 2019 Durango, "discussed the features of the vehicle with
9   Dodge's sales representatives" and "viewed the window stickers" on two Durangos. "None of
10  these sources disclosed the Defect[.]" *Id.* In January 2023, Jenkins noticed water in the taillight
11  of his Durango. (*Id.* ¶ 25.) Jenkins brought his car to Putnam for repair, where he was told that
12  neither the factory limited warranty nor his extended warranty covered the Defect and that the
13  repair would cost about $1,300. (*Id.*) Jenkins opted not to get the Defect repaired at Putnam.
14  (*Id.*)
15      In 2024, Brookshier purchased a used 2021 Durango from Keyes Lexus in Los Angeles,
16  California. (*Id.* ¶ 32.) Brookshier "researched Durangos online" and "reviewed … television and
17  online advertisements and marketing materials" for the Durango before he purchased it. (*Id.* ¶ 33.)
18  Brookshier previously purchased a 2017 Durango, which manifested the Defect. He alleges that
19  "a primary factor in [his] decision" to purchase the 2021 Durango was his belief that the vehicle
20  had been redesigned to remedy the Defect. (*Id.* ¶ 34.) In March 2024, Brookshier noticed water
21  in his Durango's taillight and called Ontario Dodge. Ontario Dodge informed Brookshier that
22  despite the 3-year, 36,000-mile limited warranty issued by Dodge, the necessary repairs were not
23  covered. (*Id.* ¶ 35.)
24      The Court will address additional facts in the analysis.
25  //
26  //
27  //
28  //

## ANALYSIS

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claims sounding in fraud or mistake are subject to heightened pleading requirements, which require that a plaintiff claiming fraud "must state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Rule 9(b)'s particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106. Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

If the allegations are insufficient to state a claim, a court should grant leave to amend,

unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). However, if a plaintiff has previously amended and failed to correct deficiencies, a court's "discretion to deny leave to amend is particularly broad[.]" *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

### B.     Brookshier States A Claim for Breach of Express Warranty.

FCA argues that Brookshier's breach of express warranty claim fails because he does not allege that he sought the repair before the warranty's "applicable time or mileage periods … elapsed." *Daughtry v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006). Brookshier alleges that a "factory 3-year, 36,000 mile limited warranty … came standard with [his] vehicle" but does not provide any additional information about the warranty. (SAC ¶ 35.) He also alleges that he called Ontario Dodge in late March 2024 and was informed that "*despite* the factory 3-year, 36,000-mile limited warranty," repairs for the Defect were not covered. (*Id.* (emphasis added).) Brookshier alleges when he called about the Defect in March 2024, his 2021 Durango only had 28,000 miles on it. Reading the allegations in the light most favorable to Brookshier, it is reasonable to infer from the statement that "despite" the warranty and from the model date of his Durango, he sought repairs before the warranty expired.

Accordingly, the Court denies FCA's motion to dismiss Brookshier's express warranty claim.

### C.     The Fraud Based Claims.

FCA argues each of the fraud based claims fail because Plaintiffs fail to allege they had a "transactional relationship" with FCA. FCA also challenges the sufficiency of Plaintiffs' allegations under Rule 9(b).

#### 1.     The Court Orders Additional Briefing on the Claim for Negligent Misrepresentation.

In their opposition, Plaintiffs represent that each of their fraud based claims "are premised entirely on omissions[.]" (Opp. Br. at 9:27-28.) "A negligent misrepresentation claim 'requires a

5

positive assertion,' not merely an omission." *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011) (quoting *Vega v. Jones Day Reavis & Pogue,* 121 Cal. App. 4th 282, 291 n.6 (2004)). Plaintiffs alleged FCA "specifically and expressly misrepresented material facts" to them. (SAC ¶ 132.) Because Plaintiffs have disclaimed reliance on theory of affirmative misrepresentations, the Court requests additional briefing on whether California law would permit the negligent representation claim to proceed based the Plaintiffs' omissions theory.

### 2. Plaintiffs Sufficiently Allege that FCA Had a Duty to Disclose the Defect.

Because Plaintiffs rely on an omissions theory, they must allege facts showing FCA had a duty to disclose the Defect. *See, e.g., Daughtry*, 144 Cal. App. 4th at 835. FCA argues that without a transactional relationship, there is no such duty. Plaintiffs renew the argument that they need not plead a transactional relationship because they allege the Defect presents an unreasonable safety risk. Courts within this District have determined that under California law "a manufacturer has a duty to disclose a defect that poses an unreasonable safety risk even if that manufacturer did not have a transactional relationship with the vehicle owner." *Hamm v. Mercedez-Bens USA, LLC*, No. 16-cv-03370-EJD, 2019 WL 4751911 (N.D. Cal. Sep. 30, 2019); *see also Lou v. American Honda Motor Comp., Inc.*, No. 16-cv-04384-JST, 2022 WL 18539358, at *3 (N.D. Cal., 2022); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1183-84 (N.D. Cal. 2017); *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 896 (N.D. Cal. 2015).[2]

Upon further consideration of this issue, the Court follows this line of authority and examines whether Plaintiffs sufficiently allege the Defect poses an unreasonable safety risk. FCA argues that Plaintiffs only allege facts showing "an unproven risk of harm." (Reply at 4:20). In *Lou*, the alleged defect affected electrical systems and could cause the electrical system to fail

---

[2] One of this Court's colleagues has noted California law on this issue "is in some disarray." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2018). The "disarray" relates to whether or not a plaintiff relying on an omissions theory must allege the manufacturer's product poses an unreasonable safety risk. *Id.* at 458-59; *see also In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1175 (N.D. Cal. 2019) (on reconsideration concluding that "California law, as interpreted by the Ninth Circuit, does not require pleading a safety hazard in all omission cases").

even when the car was operating. The court concluded those allegations were sufficient to overcome the need for plaintiffs to allege a transactional relationship. 2022 WL 18539358, at *3. Similarly, in *Seifi v. Mercedes-Benz USA, LLC*, the plaintiffs alleged a defect that could cause the engine to stall without prior warning, even though they had never experienced that issue. No. 12-cv-5493-TEH, 2013 WL 2285339, at *1 (N.D. Cal. 2013).

In *Seifi,* the defendant raised several arguments about why the defect was not, in fact, an unreasonable safety risk, and the court noted those arguments might prevail later in the litigation. However, it determined "the allegation, undisputed for purposes of the present motion, that the gear defect could cause a vehicle to stall, rendering it undrivable without prior warning, plausibly constitutes an unreasonable safety risk that MBUSA had a duty to disclose." *Id.* at *7; *see also Cholakyan v. Mercedez-Benz USA, LLC*, 796 F. Supp 2d 1220, 1237 (C.D. Cal, 2011) (finding plaintiff sufficiently alleged defect posed unreasonable safety risk when he alleged defect could cause "sudden and unexpected engine failure"). Here, Plaintiffs allege the Defect poses an unreasonable safety risk by increasing the risk of collisions and by increasing the risk of an electrical short that could cause a vehicle to catch fire. (*See, e.g.,* SAC ¶ 6.)

Plaintiffs also include allegations complaints to the National Highway Transportation Safety Agency ("NHTSA") from customers who raise safety concerns, including an individual who was pulled over by police and whose Durango failed a safety inspection. (*See generally id.* ¶ 76 and at p. 29 (NHTSA ID Number: 11354127).) Further, Plaintiffs include comments on internet forums, including a comment from an individual whose Durango failed a safety inspection. (*See generally id.* ¶ 78 and at p. 45 (entry dated 5/10/2019).)

As in *Seifi,* FCA's "arguments may, at a later point in this litigation, provide a basis for a factual finding that Plaintiffs have not carried their ultimate burden to demonstrate an unreasonable safety risk." 2013 WL 2285339, at *7. At this stage of the litigation, the Court concludes Plaintiffs *allege* the Defect poses an unreasonable safety risk, which is sufficient to *allege* FCA owed them a duty.

### 3. Plaintiffs Satisfy Rule 9(b).

Plaintiffs allege that FCA (who) knew about the Defect but failed to disclose it (what and

7

why) on Durango window stickers, FCA's website, including the "build your own car" feature, and in television and on-line advertisements (where) before selling the vehicles (when). The Court concludes those allegations are sufficient to satisfy Rule 9(b). *See Phillips v. Ford Motor Co.*, No. 14-cv-2989-LHK, 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014); *cf. Pelayo v. Hyundai Motor Am., Inc.*, No. 20-cv-01503-JLS-ADS, 2022 WL 2200414, at *10 (C.D. Cal. Mar. 2, 2022) (concluding allegations regarding pre-sale knowledge of dangerous defect sufficient to show more than "mere non-disclosure").

Accordingly, DENIES, IN PART, and RESERVES RULING, IN PART, on Plaintiffs' fraud based claims.

### D. The Court Dismisses Plaintiffs' Claims for Equitable Monetary Relief.

FCA also moves to dismiss Plaintiffs' claims under the UCL and the FAL and for unjust enrichment on the basis that these claims rest on the same factual predicate as their legal claims. In *Sonner v. Premier Nutrition Corporation*, the Ninth Circuit held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA." 971 F. 3d 834, 844 (9th Cir. 2020). FCA argues that, based on the Court's previous ruling, the Court should dismiss Plaintiffs' claims for equitable relief because they continue to rest on the same factual allegations as their legal claims. The Court concludes Plaintiffs have alleged sufficient facts to state claims for prospective injunctive relief. *See, e.g., Norman v. Gerber Prod. Co.*, No. 21-cv-9940-JSW, 2023 WL 122910, at *4 (N.D. Cal. Jan. 6, 2023) (citing cases).

Although the Court agrees that a plaintiff may pursue alternative theories of relief in a complaint, Plaintiffs do not allege how their claims for restitution under the FAL and UCL would differ from their claims for damages on common law claims or under the CLRA. Plaintiffs do allege that FCA "obtained additional benefits from the sale of replacement parts and repair services in order to address the Defect." (SAC ¶ 150.) But, Plaintiffs also allege that Brookshier and "the Class have also incurred and will continue to incur costs related to the diagnosis and repair of the Defect." (*Id.* ¶ 125.) Thus, Plaintiffs have not alleged that they seek "a different

8

amount in damages than [they do] in restitution." *Roffman v. Rebbl, Inc.*, 653 F. Supp 3d 723, 731 (N.D. Cal. 2023).  The Court concludes that Plaintiffs' inability to obtain damages here would result from the fact that their legal claims might fail on the merits and not from "an inherent limitation of the legal remedy that [would] render[] it inadequate." *Id.*, at 731 (quoting *Hanscom v. Reynolds Consumer Prods.*, No. 21-cv-3434-JSW, 2022 WL 591466, at *3 (N.D. Cal. Jan 21, 2022)).

Accordingly, the Court GRANTS, IN PART, Plaintiffs' motion to dismiss the FAL and the UCL claims to the extent Plaintiffs seek restitution.  For the same reasons, the Court GRANTS the motion to dismiss the unjust enrichment claim.  The Court will not grant leave to amend at this time.  If circumstances change during the course of the litigation, the Court will not preclude Plaintiffs from filing a motion for leave to amend to seek equitable monetary relief.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, FCA's motion to dismiss.  Plaintiffs shall file a supplemental brief addressing the negligent misrepresentation claim by no later than January 10, 2025.  FCA may oppose by January 24, 2025.  Plaintiffs may reply by January 31, 2025.  These briefs shall not exceed ten (10) pages for the opening brief and opposition and shall not exceed five (5) pages for the reply.  Unless the Court determines a hearing is needed, it will resolve that issue on the papers.

The Court also ORDERS the parties to appear for a case management conference on February 28, 2025, and they shall file a joint case management conference statement by February 21, 2025.

**IT IS SO ORDERED.**

Dated: December 6, 2024

JEFFREY S. WHITE
United States District Judge